Angilee K. Dakic, (UT-12722) (P-69461)
**PEARSON | BUTLER**
1802 South Jordan Parkway, Suite 200
South Jordan, Utah 84095
Tel: (801) 495-4104
Email: angilee@pearsonbutler.com
*Attorney for Plaintiff*

## IN THE UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF UTAH

| | |
|---|---|
| Christopher Peterson,<br>    Plaintiff,<br><br>v.<br><br>Nike, Inc. & Facebook, Inc.,<br>    Defendants. | **COMPLAINT FOR TORTIOUS INTERFERENCE AND PROMISSORY ESTOPPEL**<br><br>Civil Action Case No. |

Plaintiff, Christopher Peterson, by and through its undersigned counsel, hereby submits his Complaint against defendants and alleges as follows:

### JURISDICTION AND VENUE

1.  This Court has jurisdiction under 28 U.S.C. §1331 (federal question jurisdiction); 17 U.S.C. §101 et seq.; and 28 U.S.C. §1338(a)(copyright).

2.  This is a civil action seeking damages and injunctive relief under tort, equity, and the Copyright Law of the United States (17 U.S.C. §109).

3.  On information and belief, personal jurisdiction in this District is proper because each Defendant, within this District, restricted Plaintiff's use of online/virtual accounts in this State.

4.  Venue in this District is proper under 28 U.S.C. §1391(b) and/or 28 U.S.C. §1400 (a).

Utah is a regular and established place of Business and the Defendants committed the acts herein despite the Petitioner's rights under the First Sale Doctrine codified at 17 U.S.C. §109 in this District.

## THE PARTIES & BACKGROUND

5.   The Plaintiff in this case is an individual named Chris Peterson "Peterson."  The Defendants in this matter include Nike Pointer Brand Protection or "Nike" and Facebook, Inc. "Facebook."

6.   From October 2017 through January 2018, Peterson was utilizing the online retail source Facebook Marketplace— a virtual retail platform hosted by Facebook, in order to sell legitimately purchased Lakers sports jerseys "jerseys."

7.   Peterson's page was located online at https://www.facebook.com/hotnchrispy.

8.   Peterson had purchased the jerseys from the rights holder, Nike, and was reselling them on Facebook Marketplace.  See attached Exhibit A.

9.   On or about January 26, 2018, Nike filed an intellectual property complaint with the Intellectual Property Operations Division of Facebook.

10. The Complaint alleged that Peterson had infringed Nike's intellectual property rights by selling the jerseys on Facebook Marketplace.

11. Facebook immediately disabled Peterson's Facebook Account and prevented all use of Peterson's Facebook Marketplace buy and sell page, as well as his personal social page.  See attached Exhibit B.

12.  Peterson immediately contacted Facebook to inquire about the alleged rights infringement.

13. Facebook advised Peterson that if the Complaint was submitted with inaccurate information or not in good faith, to contact the complaining party to try and resolve the issue by having them submit an agreement to restore the removed content.

14. On or about February 11, 2020, legal counsel for Mr. Peterson contacted Nike regarding the improper complaint in reporting Mr. Peterson's jersey reselling under the First Sale Doctrine codified at 17 U.S.C. §109.  See attached Exhibit C.

15. On or about February 13, 2020 Nike reported to legal counsel for Mr. Peterson and to Facebook that Peterson's Facebook page can be reinstated and Nike submitted a reinstatement request to Facebook.

16. Despite numerous communications by Mr. Peterson's legal counsel with both Nike and Facebook, Peterson's Facebook page has not been reinstated.

## COUNT I

## TORTIOUS INTERFERENCE

17. A party seeking liability for tortious interference must show: "(1) that the defendant intentionally interfered with the plaintiff's existing or potential economic relations (2) for an improper purpose or by improper means (3) causing injury to the plaintiff." *Leigh Furniture & Carpet Co. v. Isom*, 657 P.2d 293, 304 (Utah 1982); SCO Group, Inc. v. International Business Machines Corporation, 879 F.3d 1062 (D.Utah 2018).

18. In this case, Nike intentionally interfered with Peterson's economic relations when it complained and reported to Facebook that Peterson's jersey sells were in violation of Nike's intellectual property rights.  In doing so Peterson's Facebook Marketplace page content was removed and his entire account was disabled.

19. Nike's complaint to Facebook was by improper means because Nike failed to make a good faith investigation into the legitimacy of Mr. Peterson's reselling. Peterson properly purchased the jerseys from the rights-holder, Nike, and he is allowed to sell the jerseys second-hand under the First Sale Doctrine.  A good faith investigation into the reselling would have revealed the legitimacy of the reselling and would have resulted in no complaint having been filed with Facebook.

20. The First Sale Doctrine codified at 17 U.S.C. §109 provides that the owner of a particular copy of a copyrighted work "lawfully made under this title" is entitled, without the authority of the copyright owner, to sell or otherwise dispose of the possession of that copy. Section 109 specifically states:

    a.  Notwithstanding the provisions of section 106(3), the owner of a particular copy or phonorecord lawfully made under this title, or any person authorized by such owner, is entitled, without the authority of the copyright owner, to sell or otherwise dispose of the possession of that copy or phonorecord.

Thus, Peterson was not required to get permission from Nike to sell the jerseys on Facebook, which were lawfully made by Nike and that he had lawfully acquired from Nike.

21. Since Facebook disabled Peterson's account in January 2018, Peterson has not been

able to get in contact with his prior purchasers, he has not been able to continue to sell to individuals who were members of his "friends"/contact list and previous customers. His efforts to mitigate damages include creating a new Facebook profile. However, he lost significant progress for growing sales on Facebook Marketplace and he had to start over in acquiring customers, thereby losing the business development he had previously accrued.  The disabled account continues to this day and Mr. Peterson continues to accrue damages. Peterson's current lost profits total at least $4,000.00 in addition to litigation costs and attorney fees.  Nike's improper complaint led to Facebook removing Peterson's Facebook Marketplace page, which caused injury to Peterson.  Facebook's refusal to reinstate the page upon Peterson & Nike's request caused injury to Peterson.

22. Therefore, Nike and Facebook should be jointly and severally liable to pay at least $4,000.00 plus litigation costs and attorney fees for damages suffered by Peterson.

## COUNT II

## PROMISSORY ESTOPEL

23. Promissory estoppel is an equitable claim for relief that compensates a party who has detrimentally relied on another's promise. *E & H Land, Ltd. v. Farmington City*, 2014 UT App 237, ¶ 29, 336 P.3d 1077 (internal punctuation and citation omitted).  The elements of promissory estoppel in Utah are: (1) the plaintiff acted with prudence and in reasonable reliance on a promise made by the defendant; (2) the defendant knew that the plaintiff had relied on the promise which the defendant should reasonably expect to induce action or forbearance on the part of the plaintiff

or a third person; (3) the defendant was aware of all material facts; and (4) the plaintiff relied on the promise and the reliance resulted in a loss to the plaintiff. *J.R. Simplot Co. v. Sales King Intern., Inc.*, 2000 UT 92, 17 P.3d 1100; *Federal Deposit Insurance Corporation v. Aviano*, 184 F.Supp.3d 1276 (D.Utah 2016).

24. In this case, Peterson acted with prudence because he was aware of, and compliant with, Facebook's User Agreement that so long as he did not infringe on a copyright owner's rights that he would be able to utilize Facebook Marketplace for its intended retail purpose, and he relied on the User Agreement. Peterson also acted with prudence in contacting Nike to correct the improper claim to ensure that a reinstatement request was submitted.

25. Facebook surely knew that Peterson, like all users, would rely on its User Agreement, as the User Agreement is expected to cause users to comply with intellectual property rights laws and not infringe upon the rights of the holders. Likewise, it is reasonable for Peterson to rely on Facebook's statement "If an agreement is reached to restore the reported content, please have the complaining party email us at ip@fb.com with their consent and the original report number of their complaint," and induce an expectation that upon the complaining party requesting reinstatement, the page complained of would be reinstated.

26. Upon Peterson asserting his defense under the First Sale Doctrine, Nike submitted a request for reinstatement of Peterson's Facebook Marketplace page. Nike's reinstatement request was submitted to Facebook on February 13, 2020. At that time, Facebook was aware of all material

facts relating to Peterson's Facebook Marketplace page and his non-infringement, yet Facebook still failed to reinstate Peterson's page.

27. Peterson relied on the statements in Facebook's User Agreement, that so long as he followed Facebook's intellectual property policies he could sell his jersey's on Facebook Martketplace, but this reliance actually resulted in a loss of relationships and income for Peterson.

28. Based on the foregoing, Facebook should be estopped from disabling Peterson's original Facebook Marketplace page.

## PRAYER FOR RELIEF

**WHEREFORE,** Peterson prays for judgment against each Defendant jointly and severally and relief as follows:

A.   For damages of at least $4,000.00 plus litigation costs and attorney fees;

B.   For injunctive relief that https://www.facebook.com/hotnchrispy will be reinstated; and

C.   That each Defendant shall be enjoined from further interference with Peterson's sell of jerseys or other items on his Facebook Marketplace page, without a merited good faith reason to do so.

## JURY DEMAND

The Plaintiff respectfully demands a trial by jury on all triable issues.

DATED this 28th day of May, 2020.

By Pearson Butler, LLC

/s/ Angilee K. Dakic
Angilee K. Dakic
*Attorney for Plaintiff*